IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINA FLOWER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 11 C 7482 |
| CITY OF CHICAGO, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Christina Flower has sued her former employer, the City of Chicago, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1), and 42 U.S.C. § 1981. She alleges that the City subjected her to a hostile work environment based on her gender; retaliated against her for opposing gender discrimination; discriminated against her based on her gender; discriminated against her based on the fact that she was pregnant; and breached her contract of employment. The City has moved to dismiss certain of Flower's claims for failure to state a claim. For the reasons stated below, the Court grants the motion in part and denies it in part.

### Background

The Court takes the following facts from Flower's complaint.

Flower was employed by the City as a project coordinator from August 16, 2001 until July 26, 2010. In April 2002, she made a complaint of sexual harassment against her supervisor, Steve Padgitt. While her complaint was being investigated, Flower

transferred to a new department. As a result, she no longer worked with Padgitt.

In September 2009, Flower became pregnant. During her pregnancy, Flower's doctor wrote a letter to the City explaining that Flower was having physical problems with her pregnancy and that this would cause her to miss work. Flower gave this letter to her supervisors, who agreed upon a plan with Flower that gave her several options if she needed to miss work for reasons related to problems with the pregnancy. Additionally, the City had a written parental leave policy providing for six weeks of paid parental leave. Relying on this, Flower took vacation time prior to her maternity leave.

While she was pregnant, Flower was assigned extra duties as part of the Technical Assistance Group (TA Group). The TA Group consisted of Flower, three other City employees, and a consultant.

At the TA Group's first meeting on January 21, 2010, Flower learned that Padgitt was also a member of the group. After the meeting, Flower met with Loisteen Woods of the City's Human Resources Department to discuss her concerns about being in a small work group with Padgitt due to his previous harassment. Woods told Flower that she would contact the City's Sexual Harassment Compliance Office but that Flower should be prepared to work with Padgitt in the TA Group. Despite making an inquiry through the Compliance Office's website and following up with Woods, Flower heard nothing.

On March 30, 2010, Flower met with the Director of Human Resources to plan her maternity leave. The Director informed Flower that she was no longer entitled to any paid maternity leave and that she would have to take vacation time or unpaid leave. Because Flower had previously taken vacation time, she did not have enough left to

cover her parental leave.

Flower went on maternity leave beginning May 10, 2010 and returned to work on July 13, 2010. When she returned, Flower met with Woods and learned that the Compliance Office had determined that she had to keep working with Padgitt in the TA Group. Flower resigned on July 26, 2010, the day before her next TA Group meeting.

Flower alleges that the City subjected her to a hostile work environment (Count 1); retaliated against her for making a claim of sexual harassment against Padgitt (Count 2); discriminated against her due to her gender in connection with the provision of paid parental leave (Count 3); discriminated against her due to her pregnancy (Count 4); and breached her employment contract by denying her paid parental leave (Count 5). Counts 1 and 2 include allegations that the City constructively discharged Flower.

The City has moved to dismiss Flower's claims of pregnancy-based discrimination (Counts 3 and 4) and her constructive discharge claims. The City contends these claims are beyond the scope of Flower's administrative charge filed with the Equal Employment Opportunity Commission (EEOC). The City also argues that Flower failed to allege that she received a right to sue letter from the EEOC and that she cannot recover punitive damages against the City. Flower has provided the EEOC right to sue letter with her response to the motion to dismiss, and she concedes that punitive damages cannot be awarded against the City. The Court therefore addresses only the City's first argument.

## Discussion

On a motion to dismiss, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan v. Fraternal*

*Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A plaintiff has "stated a claim only if [she has] alleged enough facts to render the claim facially plausible, not just conceivable." *Fednav Int'l Ltd. v. Cont'l Ins. Co.,* 624 F.3d 834, 837 (7th Cir. 2010). Federal courts follow a notice-pleading regime, and thus in responding to a motion to dismiss, the plaintiff is allowed to hypothesize facts not specifically alleged in the complaint, "so long as the hypotheses are consistent with the complaint." *Bausch v. Stryker Corp.*, 630 F.3d 546, 559 (7th Cir. 2010).

As a general rule, a Title VII plaintiff cannot assert in a lawsuit claims that were not included in her EEOC charge. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute and of giving the employer some warning of the conduct about which the employee complains. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

Nonetheless, because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that forms the basis of each claim in the complaint she later files in court. *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). As a result, the test for determining whether an EEOC charge encompasses the claims in a lawsuit grants the Title VII plaintiff significant leeway: the plaintiff may assert the claims if they are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.*

Flower's EEOC charge said that she was asserting claims of gender

discrimination and retaliation and described the basis for those claims as follows: "On March 15, 2010, I was subjected to a hostile work environment in that Loisteen Woods, Supervisor, forced me to work on a small group project with Steven Padgitt, who sexually harassed me in 2002. The reason given was that my sexual harassment claim against Steven Padgitt is closed and done." Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. B. The charge included no reference to Flower's pregnancy or the issue of maternity / parental leave.

The Illinois Department of Human Rights (IDHR) conducted an investigation on Flower's charge and issued a report. *See* Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss, Ex. A. The City objects to consideration of the report on the present motion. The Court rejects that contention. Because of the nature of the *Cheek* standard, motions seeking to dismiss claims on the ground they are not reasonably related to the EEOC charge cannot always be determined by reference to the plaintiff's complaint and the charge alone. *See Cheek*, 31 F.3d at 502. And though the City styled its motion as a Rule 12(b)(6) motion, it relied on evidence outside the complaint, namely the EEOC charge, in seeking dismissal. Given these circumstances, it is appropriate to consider the course of the IDHR investigation in determining whether Flower's claim of constructive discharge is "like or reasonably related to" or "grow[s] out of" the allegations in her EEOC charge. *Id.* at 500.

A. **Pregnancy-based discrimination claims**

The City contends that Flower's claims of discrimination due to her pregnancy (Counts 3 and 4) are outside the scope of her EEOC charge.

5

In *Cheek*, the Seventh Circuit stated that in order for a claim in a lawsuit to be "like or reasonably related to" the allegations in an EEOC charge, the EEOC charge and the complaint must, "at a minimum, describe the *same conduct* and implicate *the same individuals*." *Cheek*, 31 F.3d at 501. The Seventh Circuit dismissed Cheek's claims of gender discrimination, even though her EEOC charge alleged gender discrimination, because her lawsuit and her EEOC charge involved different conduct. *Id.* at 502. Specifically, Cheek alleged in her lawsuit that her supervisor had a practice of assigning female employees to unprosperous sales routes, but her EEOC charge was based on her allegation that she, but not her male counterparts, was required to make certain payments. *Id.* The two were unrelated because they involved allegations of different discriminatory conduct. *Id.*

Flower's pregnancy and leave-related claims in the present case likewise are based on conduct that she did not identify in her EEOC charge. Specifically, Flower made no mention of the fact that she was denied paid parental leave or discriminated against due to her pregnancy.

As indicated earlier, Flower attached to her response to the motion to dismiss the report prepared by the IDHR after it conducted an investigation of her claims. It is noteworthy that even during the investigation, Flower appears to have asserted no claim of pregnancy-based discrimination or improper denial of paid maternity leave. The report states that Flower made reference to her maternity leave in connection with her administrative charge, but she did so only as part of a description of the events surrounding her claim of sexual harassment, not as part of a claim of pregnancy

6

discrimination.

Though not argued by Flower, the Court notes that under Title VII, pregnancy-based discrimination is defined as gender discrimination. *See* 42 U.S.C. § 2000e(k). But that does not save Flower's claims. Indeed, in *Cheek* itself, the plaintiff's EEOC charge asserted the same basis for the alleged discrimination – gender – that the plaintiff claimed in her lawsuit. But because the two claims were based on different conduct, the claim in the lawsuit was barred due to the plaintiff's failure to exhaust.

The same is true here. Flower did not claim before the EEOC that she was discriminated against based on pregnancy or that she was improperly denied paid maternity leave. Thus the City had neither fair warning of what she is now claiming nor the ability to attempt to resolve these particular claims voluntarily. Flower failed to exhaust these claims. *Accord, Devenport v. Sam's Club West*, No. 08 C 871, 2010 2403036, at *4-5 (N.D. Ill. June 8, 2010). The Court therefore dismisses Counts 3 and 4.

**B.** **Constructive discharge claims**

The City also contends that Flower's constructive discharge claim (which is included in Counts 1 and 2) are outside the scope of her EEOC charge. The Court disagrees. Flower's claim for constructive discharge is "reasonably related to" or "grow[s] out of" the allegations in an EEOC charge. *Cheek*, 31 F.3d at 501. The claim arises from the fact that she was forced to work with Padgitt in a small work group. This is part of the same set of facts that Flower used to support the allegations in her EEOC charge. Though the EEOC charge does not state that Flower was constructively

7

discharged, this does not bar her claim. Flower, who is not professionally trained as a lawyer, cannot be "expect[ed] to artfully draft the allegations in her EEOC charge." *Id.* at 502. Because the conduct she alleged as discriminatory in her EEOC charge is the same conduct that gives rise to her claims of constructive discharge, she may pursue the claims in this lawsuit.

In this regard, Flower's case is similar to *Jenkins v. Blue Cross Mut. Hosp. Ins. Inc.*, 538 F.2d 164 (7th Cir. 1976). Jenkins, the plaintiff in that case, sued her former employer, Blue Cross, claiming race and gender discrimination. Before bringing suit, Jenkins filed an EEOC charge and checked only the "race discrimination" box on her charge form. *Id.* at 167. In the body of her charge, however, Jenkins noted instances in which she had allegedly been treated differently because of her gender. *Id.* The Seventh Circuit held that even though Jenkins did not explicitly allege gender discrimination in her charge, her EEOC charge provided sufficient notice to Blue Cross of facts that might support a claim of gender discrimination. *Id.* at 169. Similarly, even though Flower did not explicitly claim she was constructively discharged in her EEOC charge, the facts on which her administrative charge of gender discrimination and retaliation was based provided the City with sufficient notice of facts that might also support a claim of constructive discharge. In short, the constructive discharge claim, in the words of *Cheek*, grew out of the conduct on which Flower based her EEOC charge.

In *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293 (7th Cir. 2004), the Seventh Circuit concluded that the plaintiff's EEOC charge, which alleged only race discrimination and retaliation, did not encompass a claim for constructive discharge.

8

The court held that because the EEOC charges preceded the plaintiff's resignation, the "delay between [the] EEOC complaint and [the plaintiff's] decision to leave was inconsistent with notice [in the EEOC charge] of constructive discharge." *Id.* at 303 n. 2; *see also Powell v. Safer Found.*, No. 09 C 645, 2010 WL 4481780 (N.D. Ill. Nov. 1, 2010) (because EEOC charge alleged only that a hostile work environment existed twenty months before plaintiff's alleged constructive discharge and never mentioned that plaintiff resigned, the defendant could not have been on notice of a claim of constructive discharge).

The present case is different. Flower filed her EEOC charge after she resigned, and the facts she provided in connection with the IDHR investigation–which the City had an opportunity to address–included the fact that she had resigned after being told she had to work with the person she alleged had sexually harassed her. This was sufficient to put both the IDHR and the City on notice that Flower's complaint included the circumstances of her separation from the City.

For these reasons, the Court declines to dismiss Flower's constructive discharge claims.

## Conclusion

For the reasons stated above, the Court grants defendant's motion to dismiss in part and denies it in part [dkt. no. 13]. The Court strikes plaintiff's request for punitive damages and dismisses Counts 3 and 4 of the complaint. The Court otherwise denies defendant's motion and directs defendant to answer the remaining claims by no later

9

than April 5, 2012.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 22, 2012